**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**EUGENE COLLINS
ADC # 138950**                                                                              **PLAINTIFF**

**V.**                    **CASE NO. 2:11CV00167 JLH/BD**

**DATRICE SLEDGE,** *et al.*                                               **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II. Procedural Background:

Plaintiff Eugene Collins, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Defendants Robert Todd Ball and Valerie Westbrook ("Defendants") acted with deliberate indifference to his serious medical needs and retaliated against him for filing a grievance. (Docket entries #2, #5, and #6).[1]

Defendants Ball and Westbrook initially moved for summary judgment (#40) on Mr. Collins's deliberate indifference and due process claims. Mr. Collins did not respond to the motion.

In an order dated August 23, 2012 (#50), the Court notified the parties of its intent to consider also granting summary judgment to the Defendants on Mr. Collins's retaliation claim. Defendants responded to the order (#53), arguing that Mr. Collins's retaliation claims fail as a matter of law. Mr. Collins also responded to the order (#54) reiterating his claims.

---

[1] A partial recommended disposition on Defendants Sledge and Yarbrough's motion for summary judgment is pending. (#51)

For the reasons set forth below, summary judgment should be granted in favor of separate Defendants Ball and Westbrook on Mr. Collins's deliberate-indifference, due process, and retaliation claims.

### III. Facts:

On February 3, 2011, Mr. Collins was placed on disciplinary court review status after being involved in an altercation with a fellow inmate that resulted in another inmate being stabbed.[2] (#40-2 at pp. 1-2) The subsequent investigation of the incident was inconclusive about whether Mr. Collins was the victim or the aggressor in the altercation. (#40-2 at pp. 1-2)

On February 22, 2011, the Classification Committee placed Mr. Collins in administrative segregation for his safety and the safety of the other inmates. (#40-2 at p. 2) He remained in either administrative segregation or isolation until he was moved to the Cummins Unit of the ADC in July of 2011. (#40-2 at p. 2)

Mr. Collins filed grievance EAM-11-2637 in which he states that during Classification Committee meetings held on April 25, 2011, and May 9, 2011, he notified Defendant Ball that he had not received his medically prescribed high-top shoes. (#40-2 at p. 2) Records from those Classification Committee meetings, however, do not reflect that Mr. Collins complained about his shoes. (#40-3 at pp. 1-2) But Mr. Collins did

---

[2]Mr. Collins has not filed a statement of material facts as required by Local Rule 7.2.

request to be placed in a bottom-tier cell and requested a medical appointment to obtain a no-stair prescription. (#40-2 at pp. 2-3, #40-3 at p. 2) Defendant Westbrook responded to the grievance stating that her notes from those Classification Committee meetings did not indicate any discussion about Mr. Collins's high-top shoe complaints. (#40-2 at p. 3)

To obtain medically prescribed footwear, an inmate must have a prescription from medical personnel. (#40-2 at p. 3) After a prescription has been written, medical personnel then order the footwear and deliver it to the inmate when it arrives. (#40-2 at p. 2) It is ADC policy to provide inmates with any and all medical prescriptions, including prescribed footwear, regardless of their classification status. (#40-2 at p. 3) Mr. Collins signed a receipt for high-top boots on June 9, 2011. (#45-2 at p. 13)

As explained, on April 24, 2011, Mr. Collins asked the Classification Committee for a bottom-tier cell assignment. (#40-2 at pp. 3-4) Defendant Ball asked Mr. Collins whether he had a prescription for a bottom-tier cell, but Mr. Collins apparently had only an outdated prescription. (#40-2 at p. 4) Mr. Ball advised Mr. Collins to place a sick-call request and get a current prescription.

Defendants Ball and Westbrook are not medically trained, and at the time of the Classification Committee meetings, neither Defendant was aware of a physical limitation that would require Mr. Collins to be housed in a bottom-tier cell. (#40-2 at p. 4, #40-3 at p. 2)

On May 4, 2011, Mr. Collins submitted an informal resolution which became grievance EAM11-01896. In the grievance, Mr. Collins complains that at the April 24, 2011 Classification Committee meeting, Mr. Ball refused to honor his request to be housed in a bottom tier cell. (#40-2 at pp. 10-13) The Warden denied Mr. Collins's appeal of the grievance because he had not presented a valid prescription requiring that he be assigned to a bottom-tier cell. (#40-2 at p. 11)

On May 12, 2011, Geraldine Campbell, APN, gave Mr. Collins a hand written no-stair prescription. (#40-2 at pp. 4, 17) A printout from the ADC's electronic offender management information system that included any and all restrictions for Mr. Collins reflects that the no-stair prescription issued by Nurse Campbell on May 12, 2011, was never entered into the system. (#40-2 at p. 4, #40-3 at p. 2)

In his May 23, 2011 appeal of the Warden's decision denying grievance EAM11-01896, Mr. Collins states that he had obtained a new prescription. (#40-2 at p. 11) On May 24, 2011, Mr. Collins submitted an informal resolution which later became grievance EAM-11-2362. In the grievance, he claimed that he had obtained a no-stair prescription on May 12, 2011, but still had not been moved to a bottom-tier cell. (#40-2 at p. 4) Mr. Collins was moved to a bottom-tier cell on May 26, 2011. (#40-3 at p. 3)

**IV.     Discussion:**

    A.     Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). When the nonmoving party cannot present sufficient facts to establish a necessary element of the case, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 447 U.S. at 322–23, 106 S.Ct. at 2552.

    B.     Sovereign Immunity

Mr. Collins's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). For that reason, Mr. Collins's official-capacity claims seeking money damages from the Defendants must be dismissed.

    C.    Deliberate Indifference

        1.    Prescription footwear

Mr. Collins claims that Defendant Ball was deliberately indifferent to his serious medical needs when he prevented him from receiving his prescription high-top shoes while he was incarcerated in administrative segregation.

Prison officials or their agents violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). However, failing to provide proper medical care to a prisoner amounts to a constitutional violation only if the inmate can show that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (quoting *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997)). Under settled law, negligence on the part of prison officials – or even gross negligence – cannot support a constitutional claim. *Alberson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006) (citing *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

Inmates who complain that a delay in medical treatment amounted to a constitutional violation must come forward with either "verifying medical evidence" in the record to establish the detrimental effect of the delay or show that the need for medical treatment would have been obvious even to a non-medical layperson. See *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995)

Even assuming that Mr. Collins had a serious medical need and that Defendant Ball was aware of the need, Mr. Collins has not come forward with any verifying medical evidence in the record to establish that he suffered a detrimental effect from the delay in receiving his shoes. See *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (citing *Crowley v. Hedgepeth*, 109 F.3d 500 (8th Cir. 1997) (a delay in providing an inmate prescription sunglasses did not constitute deliberate indifference because the inmate failed to show that the delay had an adverse effect on his eye condition)); see also *Burke v. N. Dakota Dept. of Correction & Rehab.*, 620 F. Supp. 2d 1035, 1066 (D.N.D. 2009) (granting summary judgment on deliberate indifference claim where plaintiff failed to provide any verifying medical evidence that the delay in receiving athletic supporter had any adverse effect on his medical condition). According to Michael Person, M.D., "[t]here is nothing in the [medical] record to reflect that Mr. Collins was injured by not having ankle-supporting high-top boots." (#45-2 at p. 4)

In his response, Mr. Collins claims that Defendant Ball acted "in an unprofessional manner" in handling the high-top shoe situation. (#54) Defendants' failure to act in the situation constitutes, at most, negligence. But as explained, negligence, even gross negligence, cannot support a constitutional claim. *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009).

    2.    No-Stair Prescription

Mr. Collins also claims that Defendants were deliberately indifferent because there was a delay of fourteen days between the time he obtained a "no stairs" prescription and the time he was moved to a bottom-tier cell.

When Mr. Collins first raised the issue of a bottom-tier cell with the Defendants on April 25, 2011, he did not have a current prescription for the requested assignment. Mr. Collins received his handwritten "no stairs" prescription from Advanced Practice Nurse Geraldine Campbell on May 12, 2011, but the prescription was never entered into the ADC's Electronic Offender Management Information System. (#40-2 at p. 4, #40-3 at p. 2) Consequently, Defendants were not aware of the prescription until Mr. Collins submitted an informal resolution on May 24, 2011. (#40-2 at p. 4, #40-3 at p. 3) Defendant Westbrook, who coordinates bed assignments for inmates at the EARU moved Mr. Collins to a bottom-tier cell on May 26, 2011, after being shown a copy of the no-stair prescription. (#40-3 at pp. 1, 3)

Again, Mr. Collins has not come forward with genuinely disputed material facts from which a fact-finder could rationally conclude that the Defendants acted with deliberate indifference to his serious medical need. Defendants' testimony establishes that they became aware of Mr. Collins's prescription requiring a bottom-tier cell on or around May 24th and moved him to a bottom-tier cell on May 26th. Further, Mr. Collins has not set forth any verifying medical evidence to establish that he suffered a detrimental effect from the fourteen-day delay in being moved to a bottom-tier cell. Accordingly, Defendants are entitled to summary judgment on Mr. Collins's deliberate indifference claims.

   D.   Due Process

Mr. Collins also argues that his assignment to administrative segregation violated his due process rights. More specifically, he claims that because he was not found guilty of a disciplinary infraction as a result of the February 3, 2011 altercation, he should not have been placed in administrative segregation.

In order to prevail on a Fourteenth Amendment due process claim, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action." See *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). Because Mr. Collins does not allege that Defendants deprived him of life or property, he must rely on the denial of a liberty interest to support his due process claim. *Id*.

But under settled law, a prisoner's liberty interests are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner*, 515 U.S. 472, 487, 115 S.Ct. 2293 (1995). The Eighth Circuit has held that placement in punitive isolation or administrative segregation for relatively short intervals of time, including the temporary suspension of privileges while so confined, does not constitute the type of "atypical and significant" hardship that would trigger the protection of the Due Process Clause. See *Portley–El v. Brill*, 288 F.3d 1063, 1065–66 (8th Cir. 2002) (holding that thirty days in punitive segregation was not an atypical and significant hardship under *Sandin*); *Hemphill v. Delo*, Case No. 95–3357, 1997 WL 581079 (8th Cir. Sept. 22, 1997) (unpublished decision) (finding that four days of lockdown, thirty days in punitive disciplinary segregation and 290 days in administrative segregation was not an "atypical and significant hardship" under *Sandin*); *Driscoll v. Youngman*, Case No. 95–4037, 1997 WL 581072 (8th Cir. Sept. 22, 1997) (unpublished decision) (finding that 135 days in disciplinary and administrative segregation without "meaningful exercise, natural light or adequate time in the library" did not satisfy the *Sandin* standard); and *Furlough v. Brandon*, 2009 WL 4898418 (E.D.Ark. Dec. 15, 2009) (inmate plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months).

"[O]nly those deprivations denying 'the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991)). Here, Mr. Collins fails to allege that he was denied any of life's necessities while housed in administrative segregation.

Mr. Collins has not come forward with sufficient evidence from which a fact-finder could conclude that his five-month assignment to administrative segregation constituted an "atypical and significant" hardship. Accordingly, Defendants are entitled to summary judgment on Mr. Collins's due process claim.

E. Retaliation

Finally, Mr. Collins claims that, in retaliation for filing grievances against them, Defendants Ball and Westbrook refused to honor his "no stairs" prescription and delayed moving him to a bottom-tier cell. (#2 at p. 11)

To establish a prima facie case for retaliation, Mr. Collins must show that: (1) he exercised a constitutionally protected right; (2) prison officials disciplined him; and (3) his exercise of a protected right was the motivation for the discipline. *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Mr. Collins bears a heavy evidentiary burden to establish a prima facie case. *Id*. (citing *Murphy v. Mo. Dept. of Corr.*, 769 F .2d 502, 503 n. 1 (8th Cir. 1985)). He must come forward with more than

a bare allegation that an act was retaliatory. *Id*. (citing *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)).

The facts are not in dispute related to Mr. Collins's retaliation claim. Mr. Ball was involved in an altercation with a fellow inmate that resulted in another inmate being stabbed. An investigation into the incident was inconclusive about Mr. Collins's involvement. On February 22, 2011, Mr. Collins was placed in administrative segregation.

On March 10, 2011, Mr. Collins filed grievance EAM11-00985 claiming that Mr. Ball and Ms. Westbrook had placed him in administrative segregation as punishment for the altercation even though he had been cleared of disciplinary charges. (#5 at p. 10)

On April 25, 2011, Mr. Collins went before the Classification Committee and requested a bottom-tier cell assignment. (#40-3 at p. 2) Defendant Ball inquired whether he had a medical prescription for this assignment, but Mr. Collins had only an outdated prescription. (#40-2 at pp. 4, 13) Mr. Ball advised Mr. Collins to place a sick-call request and get a current prescription. (#40-2 at p. 13)

On May 4, 2011, Mr. Collins filed grievance EAM11-01896 alleging that Mr. Ball refused to honor his request to be housed on the bottom-tier, but at the time the grievance was filed, he still did not have a valid bottom-tier prescription. (#40-2 at pp. 10-13)

On May 12, 2011, Mr. Collins was given a hand written no-stair prescription. (#40-2 at p. 17) On May 24, 2011, he filed an informal grievance (EAM11-02362)

alleging that, despite having received a bottom-tier prescription, Mr. Ball and Ms. Westbrook, who knew of his request to move to a bottom-tier cell, had still not moved him. (#40-2 at pp. 14-16) Mr. Collins was moved to a bottom-tier cell on May 26, 2011. (#40-2 at p. 4)

Defendants Ball and Westbrook testify that they did not move Mr. Collins to a bottom-tier cell when he first requested one because he did not have a valid prescription, and they were not aware of a physical limitation that would require assigning him to a bottom-tier cell. (#40-2 at p. 4, #40-3 at p. 2) Because the prescription was not entered into the ADC's electronic offender management information system when it was issued on May 12th, they were not immediately aware of it. (#40-2 at p. 4, #40-3 at p. 2) As soon as Ms. Westbrook was shown a copy of the no stairs prescription, however, she arranged for Mr. Collins to move to a bottom-tier cell. (#40-3 at p. 3)

Mr. Collins has not come forward with any evidence to establish that retaliation motivated Defendants to delay moving him to a bottom-tier cell. See *Murphy v. Missouri Dep't of Correction*, 769 F.2d 502, 503 n. 1 (8th Cir.1985) (per curiam) (inmate claiming retaliation required to meet substantial burden of proving actual motivating factor for adverse action was as alleged). Accordingly, Defendants are entitled to summary judgment.

## V. Conclusion:

The Court recommends that Defendants Ball and Westbrook's motion for summary judgment (#40) be GRANTED, and that Mr. Collins's claims against these defendants be dismissed with prejudice.

DATED this 18th day of September, 2012.

_____
UNITED STATES MAGISTRATE JUDGE